T.C. Memo. 1995-492

UNITED STATES TAX COURT

GLENN L. WITTSTADT, JR. AND LYNNE M. WITTSTADT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7123-93.                     Filed October 11, 1995.

<u>Robert G. Cassilly</u>, for petitioners.

<u>Alan R. Peregoy</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Special Trial
Judge Robert N. Armen, Jr., pursuant to the provisions of section
7443A(b)(4) of the Internal Revenue Code of 1986, as amended, and

Rules 180, 181, and 183.[1]  The Court agrees with and adopts the Opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

ARMEN, Special Trial Judge:  For the taxable year 1989, respondent determined a deficiency in petitioners' Federal income tax, as well as deficiencies in petitioners' Federal excise taxes under sections 4973 and 4980A,[2] in the total amount of $89,740.84.  The deficiency in income tax includes the 10-percent additional tax imposed by section 72(t) on early distributions from qualified retirement plans.

The pivotal issue for decision is whether the distribution received by petitioner Glenn L. Wittstadt in 1989 from the Maryland State Teachers' Retirement System qualifies for tax-free rollover treatment under section 402(a)(5).  The resolution of this issue turns on whether the distribution constitutes a "partial distribution" as defined by section 402(a)(5)(D)(i).

If we conclude that the distribution in question does not qualify for tax-free rollover treatment, then we must also

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Sec. 4973 imposes a 6-percent excise tax on excess contributions to individual retirement accounts.  Sec. 4980A imposes a 15-percent excise tax on excess distributions from qualified retirement plans.  Both of these taxes are included within ch. 43 of the Internal Revenue Code.  They are therefore subject to the deficiency procedures set forth in subch. B of ch. 63 of the Internal Revenue Code.  See sec. 6211(a).

decide:  (1) Whether petitioners are liable for the 10-percent additional tax under section 72(t), and (2) whether petitioner Glenn L. Wittstadt is liable for either the 6-percent excise tax under section 4973 or the 15-percent excise tax under section 4980A.[3]

FINDINGS OF FACT

Petitioners resided in Edgewood, Maryland, at the time their petition was filed with the Court.

Petitioner Glenn L. Wittstadt (petitioner) served as a teacher in the Baltimore County Public Schools for 31 years.  For most of those 31 years, petitioner was a member of the Teachers' Retirement System of the State of Maryland (the Retirement System).

On June 6, 1989, petitioner completed and submitted the forms necessary to:  (1) Transfer (the transfer) from the Retirement System to the Teachers' Pension System of the State of Maryland (the Pension System),[4] and (2) retire from service as a teacher.  The transfer became effective sometime before July 1, 1989.  Petitioner's retirement became effective as of July 1,

_____

[3] Respondent concedes that petitioner Lynne M. Wittstadt is not liable for any deficiency in excise tax under either sec. 4973 or 4980A.

[4]  For a discussion of the Retirement System and the Pension System, see generally Hylton v. Commissioner, T.C. Memo. 1995-27; Hoppe v. Commissioner, T.C. Memo. 1994-635;  Hamilton v. Commissioner, T.C. Memo. 1994-633; Maryland State Teachers Association v. Hughes, 594 F. Supp. 1353, 1357-1358 (D. Md. 1984).

1989.  At the time of his retirement, petitioner was 54 years old.

The Retirement System is a qualified defined benefit plan under section 401(a).  The Retirement System requires mandatory nondeductible employee contributions.  The Pension System is also a qualified defined benefit plan under section 401(a) but generally does not require mandatory nondeductible employee contributions.  The State of Maryland contributes to both the Retirement System and the Pension System on behalf of the members of those systems.  The trusts maintained as part of the Retirement System and the Pension System are both exempt from taxation under section 501(a).

After the transfer, but before petitioner's retirement, the Retirement System issued a check to petitioner in the amount of $216,831.98 (the Transfer Refund).[5]  The Transfer Refund consisted of $32,043.53 in previously taxed contributions made by petitioner during his employment tenure as a teacher, $183,205.77 of earnings, and "pick-up contributions" of $1,582.68.  See sec. 414(h).  The earnings and "pick-up contributions" constitute the taxable portion of the Transfer Refund.[6]

_____

[5] We view as legally irrelevant the fact that payment was stopped on the Transfer Refund check because it was never received, and that a second check for the same amount was issued in Sept. 1989 after petitioner retired.

[6] The sum of the earnings ($183,205.77) and "pick-up contributions" ($1,582.68) equals $184,788.45.  In the notice of
(continued...)

If petitioner had not transferred to the Pension System but rather had remained a member of the Retirement System, he would have been entitled to retire and receive a normal service retirement benefit, including a regular monthly annuity. He would not, however, have been entitled to receive a transfer refund because a transfer refund is only payable to those who elect to transfer from the Retirement System to the Pension System.

As a member of the Pension System, petitioner receives a retirement benefit based upon his salary and his creditable years of service, specifically including those years of creditable service recognized under the Retirement System. However, due to petitioner's receipt of the Transfer Refund, petitioner's monthly annuity is less than the monthly annuity he would have received if he had not transferred to the Pension System but had retired under the Retirement System.

The Transfer Refund was mailed, in the form of a check, to T. Rowe Price, a mutual fund in Baltimore, Maryland, and deposited into an IRA account in petitioner's name in accord with a Limited Power of Attorney for Bank to Accept Deposit of Refund Check.

On their Federal income tax return for 1989, petitioners did not report any part of the Transfer Refund as income. In the

---

[6](...continued)
deficiency, however, this total is shown as $184,787.54.

notice of deficiency, respondent determined that the Transfer Refund was not eligible for tax-free rollover treatment under section 402(a)(5). Therefore, respondent determined that, under sections 402(a)(1) and 72, the taxable portion of the Transfer Refund was includable in petitioners' gross income. As corollaries to this determination, respondent also determined that petitioners are liable for: (1) The 10-percent additional tax under section 72(t), (2) the excise tax under section 4973 on excess contributions to individual retirement accounts, and (3) the excise tax under section 4980A for excess distributions from qualified retirement plans.[7]

OPINIONOPINION

## I. Rollover Issue

Petitioners contend that the Transfer Refund received by petitioner from the Retirement System was paid "on account of [petitioner's] separation from the service" within the meaning of section 402(e)(4)(A)(iii). Respondent contends to the contrary. The parties agree that our resolution of this matter will dictate whether or not the Transfer Refund qualifies as a partial distribution eligible for rollover treatment under section 402(a)(5)(D) and consequently whether or not petitioners are liable for the deficiency that respondent determined.

---

[7] See supra note 3 regarding respondent's concession as to petitioner Lynne M. Wittstadt.

A "partial distribution" is defined as "any distribution to an employee of all or any portion of the balance to the credit of such employee in a qualified trust; except that such term shall not include any distribution which is a qualified total distribution".  Sec. 402(a)(5)(E)(v).  The parties agree that the Transfer Refund was not a qualified total distribution.[8]

In order to be eligible for tax-free rollover treatment, the "partial distribution" must be "payable as provided in clause (i), (iii), or (iv) of subsection (e)(4)(A) (without regard to the second sentence thereof)".  Sec. 402(a)(5)(D)(i)(I).  As relevant herein, section 402(e)(4)(A) provides that a distribution must be made either "(i) on account of the employee's death", "(iii) on account of the employee's separation from the service", or "(iv) after the employee has become disabled".  Petitioners do not contend that the Transfer Refund was received either on account of petitioner's death or after any disability.  Therefore, our analysis is limited to section 402(e)(4)(A)(iii), i.e., the requirement that the distribution be made "on account of the employee's separation from the service".

_____

[8] See Humberson v. Commissioner, T.C. Memo. 1995-470; Pumphrey v. Commissioner, T.C. Memo. 1995-469; Dorsey v. Commissioner, T.C. Memo. 1995-97; Brown v. Commissioner, T.C. Memo. 1995-93; Hoppe v. Commissioner, T.C. Memo. 1994-635; Hamilton v. Commissioner, T.C. Memo. 1994-633; Sites v. United States, 75 AFTR 2d 95-2503 at 95-2507, 95-1 USTC par. 88,029 (D. Md. 1995).

The phrase "on account of" is not defined in either the Internal Revenue Code or in the accompanying regulations.[9] See Burton v. Commissioner, 99 T.C. 622, 626 (1992). The burden of proving that the Transfer Refund was received "on account of" petitioner's separation from the service is on petitioners. Rule 142(a); Burton v. Commissioner, supra at 632; Sarmir v. Commissioner, 66 T.C. 82, 88 (1976). This burden is particularly heavy because we have recently held, in a case involving virtually identical facts and circumstances, that a taxpayer's receipt of a distribution from the Retirement System upon transferring to the Pension System was not received on account of his retirement but rather on account of the transfer from the Retirement System to the Pension System. Hylton v. Commissioner, T.C. Memo. 1995-27; see also Adler v. Commissioner, T.C. Memo. 1995-148 (involving a transfer from the Maryland State Employees' Retirement System to the Maryland State Employees' Pension System), on appeal (4th Cir., June 29, 1995).[10]

--------

[9] The definition provided by the dictionary, "by reason of" or "because of", is not enlightening in this instance. See Webster's Third New International Dictionary (1981).

[10] The plan provisions of the Maryland State Employees' Retirement System and the Maryland State Employees' Pension System are set forth in secs. 1 through 80 and secs. 111 through 129, respectively, of Article 73B of the Annotated Code of Maryland. The plan provisions of the Maryland State Teachers' Retirement System and the Maryland State Teachers' Pension System are set forth in secs. 81 through 104 and secs. 140 through 155, respectively, of Article 73B of the Annotated Code of Maryland. The secs. governing the foregoing two Retirement Systems contain

(continued...)

In 1979, the Maryland State legislature (the legislature) adopted legislation, effective January 1, 1980, that created the Pension System and enabled participants in the Retirement System to voluntarily transfer to the Pension System.[11]  See Md. Ann. Code, art. 73B, secs. 83(8), 86B(6), 89(1)(e), 141, 142 (1988).

Petitioners' principal contention is as follows:

Petitioner's election to receive a lump sum distribution of his employee contribution was an election made pursuant to the retirement policy legally established by the Board [of Trustees for the Maryland State Retirement and Pension Systems] and was not pursuant to the statutory transfer option in Section 83(8).

According to petitioners' theory, this policy was specifically designed to encourage retiring members of the Retirement System to transfer to the Pension System.

Petitioners contend that petitioner did not satisfy the predicate requirements to transferring from the Retirement System to the Pension System imposed by Md. Ann. Code, art. 73B, sec.

---

[10](...continued)
virtually identical provisions authorizing distributions to employees and teachers who choose to transfer from a retirement system to a pension system.  See Md. Ann. Code, art. 73B, secs. 11B(5), 14(1)(g) (1988), regarding the Maryland State Employees' Retirement System; Md. Ann. Code, art. 73B, sec. 89(1)(e) (1988), regarding the Maryland State Teachers' Retirement System.

[11] The Pension System and the related transfer option to that system from the Retirement System were created in part because of concern about the actuarial integrity of the Retirement System due in particular to the unlimited post-retirement cost-of-living adjustments afforded those individuals retiring under the Retirement System.  See Hylton v. Commissioner, T.C. Memo. 1995-27; Sites v. United States, 75 AFTR 2d 95-2503, 95-1 USTC par. 88,029 (D. Md. 1995).

83(8) (1988), and therefore could only have transferred under a policy established in accord with the enabling statute that created the Board of Trustees for the Maryland State Retirement and Pension Systems (the Board). Specifically, petitioners argue that petitioner failed to initiate the transfer by filing the appropriate election form at least 90 days prior to the date that the transfer was to become effective, as required by Md. Ann. Code, art. 73B, sec. 83(8) (1988); therefore, according to this argument, petitioner was permitted to transfer to the Pension System, and to receive the Transfer Refund, on account of his retirement.

Petitioners' argument, while colorable, is not persuasive. First, petitioner was the only witness at trial. Not only did he fail to call any representative of the Maryland State Retirement Agency or any member of the Board, but, more fundamentally, he failed to persuade us of the existence of a policy in Maryland whereby individuals could elect to transfer from the Retirement System to the Pension System without satisfying the requirements of Md. Ann. Code, art. 73B, sec. 83(8) (1988). Rule 142(a); Burton v. Commissioner, supra at 632; Sarmir v. Commissioner, supra at 88.

Moreover, petitioner testified that he was aware: (1) He could have transferred from the Retirement System to the Pension System at any time after 1979 and received a transfer refund; (2) an election to transfer (and thereby receive a transfer refund)

had to be made before retirement; and (3) he could have retired without electing to transfer from the Retirement System to the Pension System, under which circumstance he would not have received a transfer refund. Therefore, even if such a policy did exist, petitioner acknowledges that only an election to transfer from the Retirement System to the Pension System was necessary in order to receive a transfer refund. In other words, he need not have retired. Accordingly, even under the policy that petitioner argues existed, petitioner's Transfer Refund would have been received on account of the election to transfer from the Retirement System to the Pension System. This is consistent with Md. Ann. Code, art. 73B, sec. 83(8) (1988), under which we find petitioner transferred from the Retirement System to the Pension System.

As we discussed in Hylton v. Commissioner, supra, and Adler v. Commissioner, supra, there is no causal link under Maryland law between a taxpayer's election to transfer from the Retirement System to the Pension System and a taxpayer's election to retire. Similarly, under Maryland law, there is no causal link between the receipt of the Transfer Refund and a taxpayer's retirement. No such causal link exists because a taxpayer is not obliged, under Maryland law, to transfer from the Retirement System to the Pension System either in order to continue working or in order to retire. Similarly, under Maryland law, a taxpayer is not obliged to retire upon electing to transfer from the Retirement System to

the Pension System.  In other words, petitioner could have transferred from the Retirement System to the Pension System and received the Transfer Refund at any time after 1979 during his employment tenure with the State; he was under no obligation whatsoever to retire solely by virtue of having transferred from the Retirement System to the Pension System.  E.g., Hamilton v. Commissioner, T.C. Memo. 1994-633 (Baltimore County teacher who elected to transfer from Retirement System to Pension System and receive transfer refund in 1989 remained so employed at least through date of trial in 1994); see Hoppe v. Commissioner, T.C. Memo. 1994-635 (Maryland State employee who elected to transfer from Employees' Retirement System Employees to Employees' Pension System and receive transfer refund in 1989 remained so employed at least through date of trial in 1994).

Upon electing to transfer from the Retirement System to the Pension System and receiving the Transfer Refund, petitioner was at liberty to dispose of the Transfer Refund as he saw fit.  In other words, Maryland law did not prescribe or otherwise limit the options available to petitioner in disposing of the Transfer Refund.  Hylton v. Commissioner, supra.

Having considered all of petitioners' arguments and finding them unpersuasive, we hold that petitioner did not receive the Transfer Refund "on account of [petitioner's] separation from the service".  Rather, we hold that petitioner received the Transfer Refund on account of his election to transfer from the Retirement

- 13 -

System to the Pension System, an election that was unrelated to petitioner's separation from the service.[12]

Having concluded that the Transfer Refund was not eligible for tax-free rollover treatment under section 402(a)(5) as a "partial distribution", we sustain respondent's income tax determination for the taxable year in issue.

## II. Section 72(t) Additional Tax Issue

We turn next to respondent's determination that petitioners are liable for the 10-percent additional tax imposed by section 72(t).

Section 72(t) provides for a 10-percent additional tax on early distributions from qualified retirement plans. Paragraph (1), which imposes the tax, provides in relevant part as follows:

> (1) Imposition of Additional Tax.--If any taxpayer receives any amount from a qualified retirement plan * * * , the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income.

We have already sustained respondent's determination that the taxable portion of the Transfer Refund is includable in petitioners' gross income in the year of receipt. Because none of the exceptions of section 72(t)(2)(A) apply to relieve

_____

[12] We acknowledge that petitioner elected to retire on the same day that he elected to transfer from the Retirement System to the Pension System. The temporal proximity of these independent elections is not, however, relevant to our conclusion of law. Adler v. Commissioner, supra; Hylton v. Commissioner, supra.

petitioners of this additional tax, we also sustain respondent's determination that petitioners are liable for the 10-percent additional tax imposed by section 72(t).  See O'Connor v. Commissioner, T.C. Memo. 1994-170; Wheeler v. Commissioner, T.C. Memo. 1993-561; cf. Dorsey v. Commissioner, T.C. Memo. 1995-97; Brown v. Commissioner, T.C. Memo. 1995-93.

III. Excise Tax Issues

Finally, we turn to respondent's excise tax determinations. Section 4973(a) imposes a 6-percent excise tax on excess contributions to an IRA.  As relevant herein, an "excess contribution" is the amount contributed in excess of the amount allowable as a deduction under section 219, exclusive of amounts properly rolled over tax free.  Sec. 4973(b).  As discussed above, because petitioner's Transfer Refund was not eligible for tax-free rollover treatment, so much of petitioner's IRA contribution in 1989 as exceeds $2,000 is subject to the excise tax under section 4973(a).

Section 4980A(a) imposes a 15-percent excise tax on excess distributions from qualified retirement plans.  As relevant herein, an "excess distribution" is defined as the aggregate amount of the retirement distributions with respect to any individual during any calendar year to the extent that such amount exceeds $150,000.  Sec. 4980A(c)(1).  Because petitioner's Transfer Refund exceeded $150,000, petitioner is also subject to this tax; however, petitioner is entitled to an offset for the

amount of tax imposed by section 72(t) to the extent attributable to the excess distribution.  Sec. 4980A(b).

IV. <u>Conclusion</u>

In order to give effect to our disposition of the disputed issues,

<u>Decision will be entered</u>

<u>under Rule 155</u>.