T.C. Memo. 1995-599


UNITED STATES TAX COURT


RHETT B. ROSS AND SANDRA L. ROSS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4985-93.            Filed December 19, 1995.


<u>Paula M. Junghans</u>, for petitioners.

<u>Alan R. Peregoy</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


DAWSON, <u>Judge</u>:  This case was assigned to Special Trial Judge Robert N. Armen, Jr., pursuant to the provisions of section 7443A(b)(4) of the Internal Revenue Code of 1986, as amended, and Rules 180, 181, and 183.[1]  The Court agrees with and adopts the Opinion of the Special Trial Judge, which is set forth below.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1989, the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

OPINION OF THE SPECIAL TRIAL JUDGE

ARMEN, Special Trial Judge: For the taxable year 1989, respondent determined a deficiency in petitioners' Federal income tax, as well as deficiencies in petitioners' Federal excise taxes under sections 4973 and 4980A,[2] in the total amount of $34,974.34. The deficiency in income tax includes the 10-percent additional tax imposed by section 72(t) on early distributions from qualified retirement plans.

The pivotal issue for decision is whether the distribution received by petitioner Rhett B. Ross in 1989 from the Maryland State Teachers' Retirement System qualifies for tax-free rollover treatment under section 402(a)(5). The resolution of this issue turns on whether the distribution constitutes a "qualified total distribution" as defined by section 402(a)(5)(E)(i). If we conclude that the distribution in question does not qualify for tax-free rollover treatment, then we must also decide whether petitioners are liable for the 10-percent additional tax under section 72(t).[3]

---

[2] Sec. 4973 imposes a 6-percent excise tax on excess contributions to individual retirement accounts. Sec. 4980A imposes a 15-percent excise tax on excess distributions from qualified retirement plans. Both of these taxes are included within ch. 43 of the I.R.C. They are therefore subject to the deficiency procedures set forth in subch. B of ch. 63 of the I.R.C. See sec. 6211(a).

[3] At trial, respondent conceded that the notice of deficiency overstates the amount of the deficiency in excise tax under sec. 4973 and that the correct amount of such deficiency is $4,080 rather than $4,200. On brief, respondent conceded that petitioner Sandra L. Ross is not liable for any deficiency in excise tax under either sec. 4973 or 4980A. At trial, petitioner Rhett B. Ross conceded liability for the 15-percent excise tax under section 4980A, and on brief he effectively conceded liability for the 6-percent excise tax under section 4973 by abandoning the issue. See Money v.

FINDINGS OF FACT

Petitioners resided in Ijamsville, Maryland, at the time that their petition was filed with the Court.

At the time of trial, petitioner Rhett B. Ross (petitioner) was employed, and had been so employed for some 32 years, as a teacher in the public schools of the State of Maryland. During 1989, the year in issue, as well as at the time of trial, petitioner was employed by Montgomery County Public Schools, where he taught physical education and coached varsity basketball and baseball.

For most of petitioner's career as a teacher in the Maryland public schools, petitioner was a member of the Teachers' Retirement System of the State of Maryland (the Retirement System). On October 22, 1989, however, petitioner voluntarily elected to transfer from the Retirement System to the Teachers' Pension System of the State of Maryland (the Pension System).[4] Petitioner's transfer became effective November 1, 1989.

The Retirement System is a qualified defined benefit plan under section 401(a). The Retirement System requires mandatory

Commissioner, 89 T.C. 46, 48 (1987); Atlee v. Commissioner, 67 T.C. 395, 396 n.2 (1976); Hedrick v. Commissioner, 63 T.C. 395, 396-397 (1974); Alexander v. Commissioner, 61 T.C. 278, 288 n.6 (1973); Stengel v. Commissioner, T.C. Memo. 1992-570, affd. without published opinion 996 F.2d 1227 (9th Cir. 1993); Cotter v. Commissioner, T.C. Memo. 1991-316.

[4] For a discussion of the Retirement System and the Pension System, see generally Hylton v. Commissioner, T.C. Memo. 1995-27; Hoppe v. Commissioner, T.C. Memo. 1994-635; Hamilton v. Commissioner, T.C. Memo. 1994-633; Maryland State Teachers Association v. Hughes, 594 F. Supp. 1353, 1357-1358 (D. Md. 1984); Conway v. United States, 76 AFTR 2d 95-6918 (D. Md. 1995).

nondeductible employee contributions.  The Pension System is also a qualified defined benefit plan under section 401(a) but generally does not require mandatory nondeductible employee contributions.  The State of Maryland contributes to both the Retirement System and the Pension System on behalf of the members of those systems.  The trusts maintained as part of the Retirement System and the Pension System are both exempt from taxation under section 501(a).

Within a few weeks after the effective date of petitioner's transfer from the Retirement System to the Pension System, the Retirement System issued a check to petitioner in the amount of $172,559.14 (the Transfer Refund).  The Transfer Refund consisted of $18,112.25 in previously taxed contributions made by petitioner during his employment tenure as a teacher and $154,446.89 of earnings.  The earnings constitute the taxable portion of the Transfer Refund.

At the time that he received the Transfer Refund, petitioner was 47 years old and was not disabled.

If petitioner had not transferred to the Pension System but rather had remained a member of the Retirement System, he would have been entitled to retire at an appropriate age and receive a normal service retirement benefit, including a regular monthly annuity.  He would not, however, have been entitled to receive a transfer refund because a transfer refund is only payable to

those who elect to transfer from the Retirement System to the Pension System.

As a member of the Pension System, petitioner will eventually receive a retirement benefit based upon his salary and his creditable years of service, specifically including those years of creditable service recognized under the Retirement System. However, because of petitioner's receipt of the Transfer Refund, petitioner's monthly annuity, upon retirement, will be less than the monthly annuity that he would have received if he had not transferred to the Pension System but had ultimately retired under the Retirement System.

Petitioner received the Transfer Refund in the form of a check dated November 30, 1989. On January 30, 1990, within 60 days of receiving the Transfer Refund, petitioner deposited $70,000 of the Transfer Refund in an individual retirement account (IRA) with T. Rowe Price, Inc., a family of mutual funds in Baltimore, Maryland. Petitioner used the balance of the Transfer Refund to help finance a new home and to help pay his tax liability as reported on his 1989 Federal income tax return.

Petitioner received a Form 1099-R (Total Distributions From Profit-Sharing, Retirement Plans, Individual Retirement Arrangements, Insurance Contracts, Etc.) for 1989 from the Maryland State Retirement Agency. The Form 1099-R reported petitioner's Transfer Refund and reflected a gross distribution of $172,559.14, petitioner's contributions in the amount of

$18,112.25, and the taxable amount as the difference or $154,446.89.

On their Federal income tax return for 1989, petitioners disclosed the receipt of the Transfer Refund. Specifically, on line 17a of Form 1040, petitioners entered $154,447 as the amount of "Total pensions and annuities". On line 17b they reported $84,447 as the taxable amount thereof, and immediately below such entry they disclosed that the balance, or $70,000, was rolled over. Petitioners included the $84,447 amount in taxable income and paid regular income tax thereon. See sec. 1(a).

Petitioners also attached to their 1989 income tax return Form 5329 (Return for Individual Retirement Arrangement and Qualified Retirement Plans Taxes). In Part II of such form, petitioners reported liability for the 10-percent additional tax imposed by section 72(t) on early distributions from qualified retirement plans. Petitioners computed the additional tax as follows:

| | |
|---|---|
| Total distribution received | $172,559 |
| Taxable amount | 154,447 |
| Less: amount rolled over | -70,000 |
| Balance | 84,447 |
| 10 percent rate of tax | x .10 |
| Sec. 72(t) additional tax | 8,445 |

Petitioners combined their liability for the section 72(t) additional tax with their liability for the regular income tax in reporting their total tax liability on page 2 of their Form 1040 for 1989.

In December 1991, petitioner closed his IRA with T. Rowe Price, Inc., and received a distribution in the amount of $69,089. On their Federal income tax return for 1991, petitioners disclosed the receipt of this amount. Specifically, on line 16b of Form 1040, petitioners entered $69,089 as the taxable amount of "Total IRA distributions". They included this amount in taxable income and paid regular income tax thereon. See sec. 1(a).

Petitioners also attached to their 1991 income tax return Form 5329 (Additional Taxes Attributable to Qualified Retirement Plans (Including IRA's), Annuities, and Modified Endowment Contracts). In Part II of such form, petitioners reported liability for the 10-percent additional tax imposed by section 72(t) in the amount of $6,909. Petitioners computed the additional tax by multiplying the statutory rate (10 percent) by the reported distribution ($69,089).

On December 14, 1992, respondent sent petitioners a notice of deficiency. In the notice, respondent determined the deficiencies for 1989 that are in issue in the present case. Specifically, respondent determined that the Transfer Refund was not eligible for tax-free rollover treatment under section 402(a)(5). Therefore, respondent determined that, under sections 402(a)(1) and 72, the taxable portion of the Transfer Refund ($154,446.89) was includable in petitioners' gross income for 1989 and not merely the portion thereof reported by petitioners

($84,447).  As a consequence, respondent increased petitioners' income by $70,000.  As corollaries to this determination, respondent also determined that petitioners are liable for:  (1) The 10-percent additional tax under section 72(t), (2) the excise tax under section 4973 on excess contributions to individual retirement accounts, and (3) the excise tax under section 4980A for excess distributions from qualified retirement plans.[5]

In February 1993, petitioners filed Form 1040X (Amended U.S. Individual Income Tax Return), seeking to amend their 1991 income tax return.  On the amended return for 1991, petitioners sought to reduce taxable income by the previously reported IRA distribution in the amount of $69,089.  Also on the amended return for 1991, petitioners sought to eliminate the previously reported additional tax under section 72(t) in the amount of $6,909.

In July 1993, the Commissioner sent petitioners a notice of claim disallowance in respect of their claim for refund for 1991. In July 1995, petitioners commenced a suit for refund against the United States in the U.S. District Court for the District of Maryland in respect of said claim for refund.  Such refund action is presently pending at docket No. Y952024.

---

[5] See supra note 3 regarding the parties' concessions of these corollary determinations.

OPINION

I. <u>Rollover Issue</u>

The pivotal issue in this case is whether petitioner's Transfer Refund qualifies for tax-free rollover treatment under section 402(a)(5). The resolution of this issue turns on whether the Transfer Refund constitutes either a "qualified total distribution", as defined by section 402(a)(5)(E)(i), or a "partial distribution", as defined by section 402(a)(5)(D)(i).

Petitioners concede that the Transfer Refund does not qualify as a partial distribution under section 402(a)(5)(D). In view of the fact that the Transfer Refund was not received on account of death, disability, or separation from the service, but rather on account of petitioner's election to transfer from the Retirement System to the Pension System, petitioners' concession is required by both statutory and case law. See sec. 402(a)(5)(D)(i)(I), (e)(4)(A); <u>Wittstadt v. Commissioner</u>, T.C. Memo. 1995-492, and cases cited therein; <u>Conway v. United States</u>, 76 AFTR 2d 95-6918 (D. Md. 1995).

On the other hand, petitioners do not concede that the Transfer Refund does not constitute a qualified total distribution. However, they have not actively argued this issue, but rather have essentially reserved the right to pursue it on appeal. In this regard, petitioners recognize that the existing case law of this Court, as well as the U.S. District Court for the District of Maryland, supports the conclusion that the

Transfer Refund does not constitute a qualified total distribution.  See <u>Wittstadt v. Commissioner</u>, T.C. Memo. 1995-492; <u>Humberson v. Commissioner</u>, T.C. Memo. 1995-470; <u>Pumphrey v. Commissioner</u>, T.C. Memo. 1995-469; <u>Adler v. Commissioner</u>, T.C. Memo. 1995-148; <u>Dorsey v. Commissioner</u>, T.C. Memo. 1995-97; <u>Brown v. Commissioner</u>, T.C. Memo. 1995-93; <u>Hylton v. Commissioner</u>, T.C. Memo. 1995-27;  <u>Hoppe v. Commissioner</u>, T.C. Memo. 1994-635; <u>Hamilton v. Commissioner</u>, T.C. Memo. 1994-633; <u>Sites v. United States</u>, 75 AFTR 2d 95-2503 at 95-2504, 95-1 USTC par. 50,280 (D. Md. 1995); see also <u>Conway v. United States</u>, <u>supra</u>; cf. <u>Wheeler v. Commissioner</u>, T.C. Memo. 1993-561.[6]  We observe that the definition of "qualified total distribution" set forth in section 402(a)(5)(E)(i)(II) incorporates the definition of "lump sum distribution" set forth in section 402(e)(4)(A) and that the latter definition includes concepts such as "balance to the credit" and "on account of the employee's separation from the service", which the foregoing cases address and resolve in the Commissioner's favor.

---

[6] We note that certain of the foregoing cases involve transfer refunds arising from the taxpayer's transfer from the Maryland State <u>Employees'</u> Retirement System to the Maryland State <u>Employees'</u> Pension System.  The plan provisions of the Maryland State Employees' Retirement System and the Maryland State Employees' Pension System are set forth in secs. 1 through 80 and secs. 111 through 129, respectively, of Art. 73B of the Ann. Code of Md.  The plan provisions of the Maryland State <u>Teachers'</u> Retirement System and the Maryland State <u>Teachers'</u> Pension System are set forth in secs. 81 through 104 and secs. 140 through 155, respectively, of Art. 73B of the Ann. Code of Md.  The secs. governing the foregoing two Retirement Systems contain virtually identical provisions authorizing distributions to employees and teachers who choose to transfer from a retirement system to a pension system.  See Md. Ann. Code, art. 73B, secs. 11B(5), 14(1)(g) (1988), regarding the Maryland State Employees' Retirement System; Md. Ann. Code, art. 73B, sec. 89(1)(e) (1988), regarding the Maryland State Teachers' Retirement System.

Based on existing case law, we hold that the Transfer Refund does not qualify for tax-free rollover treatment under section 402(a)(5) because it does not constitute a qualified total distribution.

## II. Section 72(t) Additional Tax Issue

We turn next to respondent's determination that petitioners are liable for the 10-percent additional tax imposed by section 72(t).

Section 72(t) provides for a 10-percent additional tax on early distributions from qualified retirement plans. Paragraph (1), which imposes the tax, provides in relevant part as follows:

> (1) Imposition of Additional Tax.--If any taxpayer receives any amount from a qualified retirement plan * * * the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income.

We have already sustained respondent's determination that the taxable portion of the Transfer Refund is includable in petitioners' gross income in the year of receipt. Because none of the exceptions of section 72(t)(2) apply to relieve petitioners of this additional tax, we can see no alternative but to sustain respondent's determination that petitioners are liable for the 10-percent additional tax imposed by section 72(t).

Petitioners argue, however, that there is an alternative. First, petitioners contend that they have already paid the additional tax under section 72(t) on the taxable portion of the

Transfer Refund. In this regard petitioners point to the fact that they reported liability for additional tax under section 72(t) on their 1989 income tax return in the amount of $8,445 based on a reported taxable distribution in the amount of $84,447 and on their 1991 income tax return in the amount of $6,909 based on a reported taxable distribution in the amount of $69,089.[7]

There are at least two fundamental weaknesses to petitioners' contention. First, petitioners overlook the fact that they have commenced a suit for refund against the United States in the U.S. District Court for the District of Maryland. Such action involves petitioners' claim for refund relating to the payment of additional tax under section 72(t) in 1991. In other words, petitioners are currently seeking the recovery of taxes allegedly overpaid relating to the reporting of the IRA distribution in December 1991 and the additional tax under section 72(t) paid in respect thereof.

Second, petitioners overlook the fact that only 1 taxable year is pending before this Court and that such year is 1989. Even though petitioners' litigation expenses relating to their refund action would be minimized, if not obviated, by our resolving the issues pertaining to 1991, we simply have no

---

[7] The sum of the two reported distributions, i.e., $84,447 + $69,089 or $153,536, is slightly less than the taxable portion of petitioner's Transfer Refund, i.e., $154,447. Accordingly, the sum of the additional taxes under sec. 72(t) reported by petitioners on their 1989 and 1991 income tax returns ($15,354) is slightly less than the additional tax on the taxable portion of petitioner's Transfer Refund ($15,448). This difference is unimportant to our decision.

jurisdiction over that year. See Commissioner v. Gooch Milling & Elevator Co., 320 U.S. 418 (1943). Moreover, in deciding petitioners' liability for additional tax under section 72(t) for 1989, we fail to appreciate the relevance of petitioners' original reporting position for 1991. Cf. sec. 6214(b). Apart from the fact that the District Court might rule in petitioners' favor in their refund action, we are aware of the annual accounting principle, which holds that taxable income is determined on an annual, rather than on a transactional, basis. Burnet v. Sanford & Brooks Co., 282 U.S. 359, 365-366 (1931). We have therefore approached the issue of petitioners' liability for additional tax under section 72(t) for 1989 with regard only for the facts and law pertaining to that year.

Alternatively, petitioners contend that even if petitioner Rhett B. Ross is liable for the additional tax under section 72(t), petitioner Sandra L. Ross is not so liable. In this regard, petitioners contend that the joint and several liability provision of section 6013(d)(3) applies only to income taxes, and that the additional tax under section 72(t) is a penalty and not a tax. We think that petitioners' contention is without merit for the following reasons.

First, section 72(t) denominates the exaction that it imposes as a "tax" and not as a "penalty". Other sections of the Internal Revenue Code denominate the exactions that they impose as "penalties" or "additions to tax". See, e.g., section 6651(a)

(additions to tax for failure to file return or to pay tax), section 6654(a) (addition to tax for failure to pay estimated income tax), section 6662(a) (accuracy-related penalty), and section 6663(a) (fraud penalty).

Second, structurally, section 72(t) is part of chapter 1 of subtitle A of the Internal Revenue Code. Subtitle A is denominated "Income Taxes" and chapter 1 is denominated "Normal Taxes and Surtaxes". The penalties and additions to tax noted above are found in chapter 68 (Additions to the Tax, Additional Amounts, and Assessable Penalties) of subtitle F (Procedure and Administration).

Third, chapter 1 of subtitle A of the Internal Revenue Code includes a number of income taxes. Insofar as individuals are concerned, there is, of course, the regular income tax imposed by section 1 and the alternative minimum tax imposed by section 55. Additional income taxes are found in other chapters of subtitle A, most notably the self-employment tax in chapter 2. It is apparent, therefore, that there is not a single income tax, but rather a number of separate taxes that compose what is commonly referred to as "the income tax".

Fourth, the foregoing point is underscored by section 6013(a), which authorizes a husband and wife to make "a single return jointly of income taxes under subtitle A". (Emphasis added.) Indeed, line 52 of Form 1040, the basic individual

income tax return, is dedicated to the reporting of liability for the additional tax under section 72(t).

Fifth, a useful analogy is furnished by section 1.6017-1(b)(2), Income Tax Regs. That section provides that, as a general rule, each spouse is jointly and severally liable for any self-employment tax that is reported on a joint return. As previously noted, the self-employment tax is imposed by chapter 2 of the Internal Revenue Code and is distinct from the regular income tax imposed by section 1.

Petitioners rely heavily on In re Cassidy, 983 F.2d 161 (10th Cir. 1992), wherein the additional tax under section 72(t) was viewed as a penalty. That case, however, is not controlling because the Court of Appeals' holding was based on the application of bankruptcy policy and was limited to determining priority of claims in bankruptcy proceedings.

In view of the foregoing, we hold that petitioners are liable for the 10-percent additional tax imposed by section 72(t). See Wittstadt v. Commissioner, T.C. Memo. 1995-492, and cases cited therein.

III. Conclusion

In order to give effect to our disposition of the disputed issues, as well as the parties' concessions,

Decision will be entered

under Rule 155.