JAMES G. THOMPSON AND SHIRLEY L. THOMPSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Thompson v. Commissioner
Docket No. 8524-93.
United States Tax Court
T.C. Memo 1996-266; 1996 Tax Ct. Memo LEXIS 280; 71 T.C.M. (CCH) 3160; June 11, 1996, Filed *280 Decision will be entered under Rule 155. Paula M. Junghans, for petitioners. Alan R. Peregoy, for respondent. DAWSON, Judge; ARMEN, Special Trial Judge DAWSON, ARMEN
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Robert N. Armen, Jr., pursuant to the provisions of section 7443A(b)(4) of the Internal Revenue Code of 1986, as amended, and Rules 180, 181, and 183. [1] The Court agrees with and adopts the Opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE ARMEN, Special Trial Judge: Respondent determined the following deficiencies in petitioners' Federal income and excise taxes for the taxable years 1989 and 1990: (1) For the taxable year 1989, respondent determined a deficiency in petitioners' *281 income tax in the amount of $ 2,380. The deficiency in income tax includes the 10-percent additional tax imposed by section 72(t) on early distributions from qualified retirement plans. Respondent also determined a deficiency in petitioners' excise tax under section 4973 in the amount of $ 8,085. [2]
(2) For the taxable year 1990, respondent determined a deficiency in petitioners' income tax in the amount of $ 58,485. The deficiency in income tax includes the 10-percent additional tax imposed by section 72(t). After concessions by the parties, [3] the issues for decision are as follows: (1) Whether the Transfer Refund distribution received by petitioner James G. Thompson in 1989 from the Maryland State Teachers' Retirement System qualifies for tax-free *282 rollover treatment under section 402(a)(5); (2) whether petitioners must include in their gross income for 1990, distributions received from certain individual retirement accounts after April 16, 1990; and (3) whether, for 1989, petitioner Shirley L. Thompson is liable for the additional tax imposed by section 72(t); and whether, for 1990, either petitioner James G. Thompson or petitioner Shirley L. Thompson is liable for the additional tax imposed by such section. *283 FINDINGS OF FACT Petitioners resided in Cumberland, Maryland, at the time that their petition was filed with the Court. At the time of trial, petitioner James G. Thompson (petitioner) had been employed by the public schools in Allegheny County in the State of Maryland for 32 years. During 1989, petitioner was a high school principal; however, at the time of trial, petitioner was employed as a supervisor of athletics and physical education. Petitioner's Transfer Refund
As an employee of the Allegheny County Public Schools, petitioner was originally a member of the Maryland State Teachers Retirement System (the Retirement System) until he transferred to the Maryland State Teachers Pension System (the Pension System) on November 1, 1989. [4]
*284 The Retirement System and the Pension System are qualified defined benefit plans under section 401(a). The Retirement System requires mandatory nondeductible employee contributions, but the Pension System generally does not require such contributions. The State of Maryland contributes to both the Retirement System and the Pension System on behalf of the members of those systems. The trusts maintained as part of the Retirement System and the Pension System are both exempt from taxation under section 501(a). As a result of his election to transfer to the Pension System, petitioner received a distribution (the Transfer Refund) from the Retirement System in the amount of $ 163,474.26. Petitioner received the Transfer Refund in the form of a check dated November 30, 1989. Petitioner's Transfer Refund consisted of $ 26,597.22 in previously taxed contributions made by petitioner during his employment tenure with the public schools, $ 2,120.37 in taxable employer "pick-up contributions", [5] and $ 134,756.67 of earnings in the form of interest. The earnings and "pick-up contributions", which total $ 136,877.04, constitute the taxable portion of the Transfer Refund. *285 At the time that petitioner received the Transfer Refund, petitioner was 50 years old, was not disabled, and remained actively employed by the public schools in Allegheny County, Maryland. If petitioner had not transferred to the Pension System but rather had remained a member of the Retirement System, he would have been entitled to retire at an appropriate age and receive a normal service retirement benefit, including a regular monthly annuity under the Retirement System. He would not have been entitled to receive a Transfer Refund, however, because a Transfer Refund is only payable to those who elect to transfer from the Retirement System to the Pension System. As a member of the Pension System, petitioner will eventually receive a retirement benefit based upon his salary and his creditable years of service, specifically including those years of creditable service recognized under the Retirement System. However, because of petitioner's receipt of the Transfer Refund, petitioner's monthly annuity, upon retirement, will be less than the monthly annuity that he would have received if he had not transferred to the Pension System but had ultimately retired under the Retirement System. *286 Rollover of Petitioner's Transfer Refund
Within 60 days of receiving the Transfer Refund, petitioner deposited the taxable portion thereof into two IRA's. On December 13, 1989, petitioner deposited approximately one-half of the taxable portion of the Transfer Refund, or $ 71,756.67, into an IRA with Nationwide Life Insurance Co. (Nationwide). On January 26, 1990, petitioner deposited the balance of the taxable portion of the Transfer Refund, or $ 65,120.37, into an IRA with American Capital Reserve Fund, Inc. (American Capital). J. Gary Marsh (Mr. Marsh), an employee of both Nationwide and American Capital, assisted petitioner in "setting up" these IRA's. Petitioner's IRA Distributions
On or about April 3, 1990, petitioner telephonically instructed Mr. Marsh to terminate both IRA's. Mr. Marsh informed petitioner that it would be necessary for petitioner to execute certain written documents in order to close out the IRA's. Mr. Marsh prepared the necessary documents and by April 10, 1990, petitioner had executed these documents. On April 10, 1990, $ 2,120.37 was withdrawn from the American Capital IRA, and on April 30, 1990, the remaining $ 63,000 was withdrawn from *287 such account. On May 11, 1990, the entire balance of the Nationwide IRA was constructively withdrawn by the conversion of such account to a nonqualified (non-IRA) account. Petitioners' 1989 Federal Income Tax Return
Petitioners' Federal income tax return for 1989 was dated February 15, 1990, and was filed on or about that same date. [6] On their return, petitioners reported "total pensions and annuities" in the amount of $ 171,556. Of this amount, $ 8,082 represented a distribution to petitioner Shirley L. Thompson from Westvaco Corp. and the remaining $ 163,474 represented petitioner's Transfer Refund from the Retirement System. Of the $ 171,556 amount disclosed on the return, petitioners reported the Westvaco distribution (in the amount of $ 8,082) as the "taxable amount" and treated petitioner's Transfer Refund (in the amount of $ 163,474) as qualifying for tax-free rollover treatment. *288 Petitioners attached Form 5329 "Return for Additional Taxes Attributable to Qualified Retirement Plans (Including IRA's), Annuities, and Modified Endowment Contracts" to their 1989 return, and reported additional tax under section 72(t) in the amount of $ 808. The additional tax was reported in respect of petitioner Shirley L. Thompson's distribution from Westvaco Corp. (i.e., 10 percent of $ 8,082, or $ 808). Petitioners' 1989 Amended Federal Income Tax Return
On May 9, 1990, petitioners amended their 1989 income tax return. Petitioners included in gross income $ 134,757; i.e., such part of the taxable portion of the Transfer Refund that represented the earnings on petitioner's previously-taxed contributions to the Retirement System. [7] *289 Petitioners also attached Form 5329 to their amended return. In Part II of such form, petitioners reported liability for the additional tax under section 72(t) in the amount of $ 13,476. They computed the additional tax by multiplying the statutory rate (10 percent) by the reported distribution ($ 134,757). On their amended return, petitioners reported an increase in their income tax liability for 1989 in the amount of $ 56,104. [8]
Petitioners' 1990 Federal Income Tax Return
On their income tax return for 1990, petitioners reported "total pensions and annuities" in the amount of $ 74,158. Of this amount, petitioners reported $ 865 as the taxable amount. [9]
*290 1989 Notice of Deficiency
In the notice of deficiency for 1989, respondent determined a deficiency in petitioners' income tax in the amount of $ 2,380, which amount includes the 10-percent additional tax imposed by section 72(t). Respondent also determined a deficiency in petitioners' excise tax under section 4973 in the amount of $ 8,085. [10]
1990 Notice of Deficiency
In the notice of deficiency for 1990, respondent determined that petitioner did not have a basis in his IRA's with Nationwide and American Capital. Respondent further determined that under sections 408(d)(1) and 72, the amounts withdrawn from petitioner's IRA's after April 16, 1990 (i.e., $ 63,000 + $ 71,756.67 = $ 134,756.67), were includable in petitioners' gross income for 1990. As a corollary, respondent also determined that petitioners were liable for the 10-percent additional tax imposed by section 72(t). OPINION I. Rollover *291 Issue
We must first decide whether the Transfer Refund received by petitioner in 1989 from the Retirement System qualifies for tax-free rollover treatment under section 402(a)(5). The resolution of this issue turns on whether the Transfer Refund constitutes either a "qualified total distribution", as defined by section 402(a)(5)(E)(i), or a "partial distribution", as defined by section 402(a)(5)(D)(i). Petitioners concede that the Transfer Refund does not qualify as a partial distribution under section 402(a)(5)(D). In view of the fact that the Transfer Refund was not received on account of death, disability, or separation from the service, but rather on account of petitioner's election to transfer from the Retirement System to the Pension System, petitioners' concession is demanded by both statutory and case law. See sec. 402(a)(5)(D)(i)(I), (e)(4)(A); Wittstadt v. Commissioner, T.C. Memo. 1995-492, and cases cited therein; Conway v. United States, 908 F. Supp. 292 (D. Md. 1995). On the other hand, petitioners do not concede that the Transfer Refund does not constitute a qualified total distribution. However, they *292 have not actively argued this issue, but rather have essentially reserved the right to pursue it on appeal. Nevertheless, petitioners recognize that the existing case law of this Court, as well as the U.S. District Court for the District of Maryland, supports the conclusion that the Transfer Refund does not constitute a qualified total distribution. See Ross v. Commissioner, T.C. Memo. 1995-599; Wittstadt v. Commissioner, T.C. Memo. 1995-492; Humberson v. Commissioner, T.C. Memo. 1995-470; Pumphrey v. Commissioner, T.C. Memo. 1995-469; Adler v. Commissioner, T.C. Memo. 1995-148; Dorsey v. Commissioner, T.C. Memo. 1995-97; Brown v. Commissioner, T.C. Memo. 1995-93; Hylton v. Commissioner, T.C. Memo. 1995-27; Hoppe v. Commissioner, T.C. Memo. 1994-635; Hamilton v. Commissioner, T.C. Memo. 1994-633; Sites v. United States, 896 F. Supp. 500 (D. Md. 1995); *293 see also Conway v. United States, supra; cf. Wheeler v. Commissioner, T.C. Memo. 1993-561. [11] In this regard, we observe that the definition of "qualified total distribution" set forth in section 402(a)(5)(E)(i)(II) incorporates the definition of "lump sum distribution" set forth in section 402(e)(4)(A). We further observe that the latter definition includes concepts such as "balance to the credit" and "on account of the employee's separation from the service", which the foregoing cases address and resolve in the Commissioner's favor. *294 Based on existing case law, we hold that petitioner's Transfer Refund does not qualify for tax-free rollover treatment under section 402(a)(5) because it does not constitute a qualified total distribution. II. IRA Distribution Issue
We must next decide whether the distributions received by petitioner from his IRA's after April 16, 1990, i.e., $ 63,000 from American Capital on April 30, 1990, and $ 71,756.67 from Nationwide on May 11, 1990, are includable in petitioners' gross income for 1990. [12]
a. General Legal Background
In general, a taxpayer is entitled to deduct the amount contributed to an IRA. Sec. 219(a); sec. 1.219-1(a), Income Tax Regs. The deduction in any taxable year, however, may not exceed the lesser of $ 2,000 or an amount equal to the compensation includable in the taxpayer's gross income for such *295 taxable year. In addition, the amount of the deduction is limited where the taxpayer was, for any part of the taxable year, an "active participant" in a retirement plan qualified under section 401(a) or a plan established for its employees by the United States, by a State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing. Sec. 219(g)(1), (5)(A)(i), (iii). In the case of an active participant who files a return as a single individual, the deduction is reduced using a ratio determined by dividing the excess of the taxpayer's modified adjusted gross income (modified AGI) over $ 25,000, by $ 10,000. [13] Sec. 219(g)(2) and (3). In the case of an active participant who files a joint return, the deduction is reduced using a ratio determined by dividing the excess of the taxpayer's modified AGI over $ 40,000, by $ 10,000. Id. *296 As relevant herein, a contribution to an IRA that exceeds the amount allowable as a deduction under section 219(a), computed without regard to the active participant reduction rule under section 219(g), is considered an excess contribution. Sec. 4973(b). An excess contribution is subject to the 6-percent excise tax imposed by section 4973(a). Generally, an amount "paid or distributed out of" an IRA to a taxpayer is includable in gross income by the taxpayer in the manner provided under section 72. Sec. 408(d)(1). As relevant herein, section 72(e)(2)(B) provides that amounts received before the annuity starting date are includable in income to the extent allocable to income on the contract and not includable in income to the extent allocable to the investment in the contract. [14]
*297 Section 408(d)(4) sets forth an exception to the foregoing general rule. As applicable to the present case, section 408(d)(4) provides that if an excess contribution is distributed to and received by the contributor on or before the due date of the return (including extensions) for the year of the excess contribution, then such excess contribution is not includable in the contributor's gross income. [15]
*298 Petitioner made an excess contribution to his Nationwide IRA in the amount of $ 69,756.67 in 1989 (i.e., $ 71,756.67 less $ 2,000) and to his American Capital IRA in the amount of $ 63,120.37 in 1990 (i.e., $ 65,120.37 less $ 2,000). The contribution to petitioner's Nationwide IRA, in the amount of $ 71,756.67, was distributed to and received by petitioner on May 11, 1990. Of the $ 65,120.37 contribution to petitioner's American Capital IRA, $ 2,120.37 and $ 63,000 were withdrawn on April 10, 1990, and April 30, 1990, respectively. Respondent determined that, under the general rule of section 408(d)(1), petitioners must include in their gross income for 1990 IRA distributions in the amount of $ 134,756.67. [16] To the contrary, petitioners contend that petitioner's IRA distributions are not includable in their gross income for 1990 because they are entitled to relief under section 408(d)(4). Thus, we must apply section 408(d)(4) to the excess contributions and subsequent withdrawals in order to determine whether petitioners are entitled to relief pursuant to this provision. *299 b. The 1989 Excess Contribution
In order to qualify for relief under section 408(d)(4), the excess contribution made by petitioner to Nationwide on December 13, 1989, in the amount of $ 69,756.67, must have been received by petitioner on or before April 16, 1990, the due date for petitioners' 1989 income tax return. Petitioner received his excess contribution from his Nationwide IRA on May 11, 1990, almost 4 weeks after the time prescribed by section 408(d)(4). Thus, respondent contends that petitioners do not satisfy the requirement in section 408(d)(4)(A) that the distribution of an excess contribution must be received on or before the date for filing the taxpayer's return for the taxable year of the contribution. [17] To the contrary, petitioners contend that they are entitled to relief under section 408(d)(4) based on Wood v. Commissioner, 93 T.C. 114 (1989). *300 Wood v. Commissioner, supra, involved a distribution of cash and stock from a profit-sharing plan to a taxpayer, who then established an IRA. In that case, the taxpayer did everything that he could reasonably be expected to do in order to rollover his lump-sum distribution as required by law. For example, the taxpayer met with an IRA trustee, instructed the IRA trustee to open an IRA, executed the documents necessary to open such IRA, and transferred the entire distribution to the IRA trustee for deposit in his IRA. However, because of a bookkeeping error by the IRA trustee, certain of the trustee's records indicated that part of the distribution had not been transferred to the IRA account within the requisite 60-day period. We held that the financial institution's bookkeeping error did not preclude rollover treatment because, in substance, the taxpayer had satisfied the statutory requirements. We think that the circumstances in the present case are comparable to those in Wood v. Commissioner, supra.
Petitioner, like the taxpayer in Wood, did everything he could reasonably be expected to do in order to comply with *301 the law. On or about April 3, 1990, petitioner requested that his excess contributions be withdrawn from his IRA's. Further, by April 10, 1990, petitioner had executed the documents necessary to effectuate such request. Thus, by April 10, 1990, petitioner had done everything that he could reasonably be expected to have done in order to comply with section 408(d)(4). We therefore hold that petitioners are not precluded from relief under that section because of Mr. Marsh's failure to withdraw the funds prior to April 16, 1990. Accordingly, the distribution of the excess contribution made by petitioner on December 13, 1989, is not includable in petitioners' gross income for 1990 and is not subject to the 6-percent excise tax under section 4973. See secs. 408(d)(4); 4973(b) flush language. c. The 1990 Excess Contribution
In order to qualify for relief under section 408(d)(4), the excess contribution made by petitioner to American Capital on January 26, 1990, in the amount of $ 63,120.37, must have been withdrawn on or before April 15, 1991, the due date for petitioners' 1990 income tax return. In fact, $ 2,120.37 was withdrawn on April 10, 1990, and the balance of the contribution *302 was withdrawn on April 30, 1990. Accordingly, as we will discuss, petitioners satisfy the requirements under section 408(d)(4) and qualify for relief. First, petitioners withdrew the excess contribution before Monday, April 15, 1991, the due date for their 1990 income tax return. See sec. 6072(a). Second, petitioners were not entitled to a deduction under section 219 with respect to the excess contribution. Third, the excess contribution was distributed accompanied by any net income attributable to such contribution. [18] Accordingly, the distribution of the excess contribution made by petitioner on January 26, 1990, is not includable in petitioners' gross income for 1990 and is not subject to the 6-percent excise tax under section 4973. See secs. 408(d)(4); 4973(b), (flush language). III. Section 72(t) Additional Tax Issue
Petitioners *303 concede that for 1989 petitioner James G. Thompson is liable for the 10-percent additional tax imposed by section 72(t). However, petitioners contend that for such year petitioner Shirley L. Thompson is not so liable. Additionally, petitioners contend that for 1990 neither petitioner James G. Thompson nor petitioner Shirley L. Thompson is liable for the additional tax imposed by section 72(t). Section 72(t) provides for a 10-percent additional tax on early distributions from qualified retirement plans. Paragraph (1), which imposes the tax, provides a relevant part as follows: (1) Imposition of Additional Tax.--If any taxpayer receives any amount from a qualified retirement plan (as defined in section 4974(c)), the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income.
By virtue of paragraph (2) of section 72(t), the 10-percent additional tax does not apply to certain distributions. For example, sec. 72(t)(2)(A) provides that the 10-percent additional tax does not apply to distributions that are: Made on or after the date on *304 which the taxpayer attains age 59-1/2; made to a beneficiary (or to the estate of the taxpayer) on or after the death of the taxpayer; attributable to the taxpayer's being disabled; or made to a taxpayer after separation from service after attainment of age 55. a. The 1989 Transfer Refund
Petitioners do not satisfy any of the statutory exceptions for 1989. Because none of the exceptions apply, we are constrained to sustain respondent's determination that the additional tax imposed by section 72(t) applies to the Transfer Refund received by petitioner in 1989. Notwithstanding the foregoing, petitioners contend that petitioner Shirley L. Thompson is not liable for the additional tax imposed by section 72(t). In this regard, petitioners contend that the joint and several liability provision of section 6013(d)(3) applies only to income taxes, and that the additional tax imposed by section 72(t) is a penalty and not a tax. [19]
*305 Petitioners' contention has been addressed and rejected by a case recently decided by this Court. Ross v. Commissioner, T.C. Memo. 1995-599. We see no reason to revisit that case. Accordingly, for the reasons stated in Ross v. Commissioner, supra, we hold that petitioner Shirley L. Thompson is liable for the additional tax imposed by section 72(t) for 1989. See sec. 6013(d)(3); Wittstadt v. Commissioner, T.C. Memo. 1995-492, and cases cited therein. b. The 1990 IRA Distributions
As previously noted, section 72(t) imposes a tax on early distributions from qualified retirement plans in an amount equal to 10-percent of the portion of the distribution that is includable in the taxpayer's gross income. Pursuant to section 408(d)(4), the IRA distributions made to petitioner from his American Capital and Nationwide IRA's in 1990 are not includable in petitioners' gross income. Accordingly, petitioners are not liable for the additional tax under section 72(t) for 1990. IV. Conclusion
In order to give effect to our disposition of the disputed issues, as well as the parties' concessions, *306 [20]
Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1989 and 1990, the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Sec. 4973 imposes a 6-percent excise tax on excess contributions to individual retirement accounts. This tax is included within ch. 43 of the I.R.C. It is therefore subject to the deficiency procedures set forth in subch. B of ch. 63 of the I.R.C. See sec. 6211(a).↩
3. Petitioners concede that the Transfer Refund distribution received by petitioner James G. Thompson in 1989 does not constitute a partial distribution as defined by sec. 402(a)(5)(D). Petitioners also concede that, for 1989, petitioner James G. Thompson is liable for: (1) The additional tax under sec. 72(t), and (2) the excise tax under sec. 4973. Finally, petitioners have abandoned the claim, made in their petition, that they overpaid their income tax for 1989. See Murphy v. Commissioner, 103 T.C. 111, 120 (1994); Smith v. Commissioner, T.C. Memo. 1994-188, affd. without published opinion 61 F.3d 31 (11th Cir. 1995). Respondent concedes: (1) For 1989, the excise tax under sec. 4973 should be calculated based on an excess contribution of $ 67,636.63 rather than $ 134,757 (i.e., $ 134,757 less $ 65,120.37 less $ 2,000 = $ 67,636.63), and (2) for such year, petitioner Shirley L. Thompson is not liable for such excise tax.↩
4. For a discussion of the Retirement System and the Pension System, see generally Hylton v. Commissioner, T.C. Memo. 1995-27; Hoppe v. Commissioner, T.C. Memo. 1994-635; Hamilton v. Commisioner, T.C. Memo. 1994-633; Maryland State Teachers Association v. Hughes, 594 F. Supp. 1353, 1357-1358 (D. Md. 1984); Conway v. United States, 908 F. Supp. 292↩ (D. Md. 1995).
5. See sec. 414(h)(2).↩
6. Petitioners filed their 1989 return well in advance of the statutory due date for such return; i.e., Mon., Apr. 16, 1990. See secs. 6072(a), 7503.↩
7. Petitioners did not include in gross income such part of the Transfer Refund that represented taxable employer "pick-up contributions, i.e., $ 2,120.37.↩
8. The $ 56,104 amount represented a reported increase in "regular" income tax under sec. 1 in the amount of $ 43,436, a reported increase in additional tax under sec. 72(t) in the amount of $ 13,476 related to petitioner's Transfer Refund, and the elimination (apparently inadvertently) of the originally reported additional tax under sec. 72(t) in the amount to $ 808 related to petitioner Shirley L. Thompson's Westvaco distribution. In other words: $ 43,436 + $ 13,476 - $ 808 = $ 56,104.↩
9. The parties stipulated that no portion of the distributions from petitioner's IRA's with Nationwide and American Capital was reported as taxable on petitioners' income tax return for 1990. However, the documentary evidence, namely, petitioners' 1990 return, together with a very faded and barely legible copy of a Form 1099-R from Nationwide, appears to contradict the parties' stipulation. Nevertheless, in view of petitioners' counsel's representation at trial that there were no earnings in respect of petitioner's IRA's, and further, in view of the fact that respondent's deficiency determinations appear to be consistent with such representation, we shall accept petitioners' counsel's representation and proceed on that basis. In any event, the matter is not crucial to the resolution of the issues before us.↩
10. See supra↩ note 3 regarding the parties' concessions, all of which relate to the taxable year 1989.
11. We note that certain of the foregoing cases involve Transfer Refunds arising from the taxpayer's transfer from the Maryland State Employees'Retirement System to the Maryland State Employees' Pension System. The plan provisions of the Maryland State Employees' Retirement System and the Maryland State Employees' Pension System are set forth in secs. 1 through 80 and secs. 111 through 129, respectively, of Art. 73B of the Ann. Code of Md. The plan provisions of the Maryland State Teachers'Retirement System and the Maryland State Teachers'↩ Pension System are set forth in secs. 81 through 104 and secs. 140 through 155, respectively, of Art. 73B of the Ann. Code of Md. The secs. governing the foregoing two Retirement Systems contain virtually identical provisions authorizing Transfer Refund distributions to employees and teachers who choose to transfer from a Retirement System to a Pension System. See Md. Ann. Code, art. 73B, secs. 11B(5), 14(1)(g) (1988), regarding the Maryland State Employees' Retirement System; Md. Ann. Code, art. 73B, sec. 89(1)(e) (1988), regarding the Maryland State Teachers' Retirement System.
12. Pursuant to sec. 408(d)(2), for purposes of sec. 72, all IRAs of an individual are treated as one contract, and all distributions during a taxable year are treated as one distribution.↩
13. As relevant herein, modified adjusted gross income means adjusted gross income computed without regard to any deduction for an IRA. Sec. 219(g)(3)(A).↩
14. Under sec. 72(c)(4), "annuity starting date" is defined as the first day of the first period for which an amount is received as an annuity under the contract. Petitioner received a single payment in the amount of $ 136,877.04 from his IRA prior to drawing annuity payments from his retirement account. Thus, the distribution was received by petitioner before the annuity starting date and, accordingly, sec. 72(e)(2)(B) applies.↩
15. Section 408(d)(4) provides in pertinent part as follows: (4) Contributions returned before due date of return.-- * * * [section 72] does not apply to the distribution of any contribution paid during a taxable year to an individual retirement account * * * if-- (A) such distribution is received on or before the day prescribed by law (including extensions of time) for filing such individual's return for such taxable year, (B) no deduction is allowed under section 219 with respect to such contribution, and (C) such distribution is accompanied by the amount of net income attributable to such contribution. [Emphasis added.]↩
16. Petitioners received IRA distributions in 1990 in the total amount of $ 136,877.04. Of this amount, respondent determined that $ 134,756.67 is includable in petitioners' gross income for 1990. Respondent determined that the difference, the $ 2,120.37 distribution returned before April 16, 1990, qualifies for relief pursuant to sec. 408(d)(4) and is not includable in petitioners' gross income for that year.↩
17. No issue has been raised regarding petitioners' failure to satisfy the remaining requirements of sec. 408(d)(4).↩
18. In fact, it would appear as if the American Capital IRA produced no net income. See supra↩ note 10. In any event, respondent has raised no issue regarding this matter.
19. Sec. 6013(d)(3) provides as follows: (3) if a joint return is made, the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several.↩
20. See supra↩ note 3. We leave for the parties to reconcile their concessions concerning the excise tax under section 4973 with the conclusions that we reached herein.