**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ALLAN R. POWELL; JOAN K. POWELL,
Petitioners-Appellants,

v.                                          No. 96-2549

COMMISSIONER OF INTERNAL REVENUE,
Respondent-Appellee.

RICHARD J. MONTGOMERY; ADELE S.
MONTGOMERY,
Petitioners-Appellants,
                                            No. 96-2554
v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent-Appellee.

Appeals from the United States Tax Court.
(Tax Ct. Nos. 93-3499, 96-8028)

Argued: June 6, 1997

Decided: October 16, 1997

Before HAMILTON and LUTTIG, Circuit Judges, and
GARBIS, United States District Judge for the
District of Maryland, sitting by designation.

_____

Affirmed by published opinion. Judge Garbis wrote the opinion, in
which Judge Hamilton and Judge Luttig joined.

_____

**COUNSEL**

**ARGUED:** Edward L. Blanton, Jr., Baltimore, Maryland, for Appellants. Kenneth W. Rosenberg, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Loretta C. Argrett, Assistant Attorney General, Richard Farber, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

**OPINION**

GARBIS, District Judge:

Appellants Allan R. and Joan K. Powell and Appellants Richard J. and Adele S. Montgomery appeal from decisions of the United States Tax Court holding them liable for assessed taxes on excess distributions from their respective retirement plans.

I. <u>INTRODUCTION</u>

A. <u>In General</u>

Succinctly put, the Internal Revenue Code permits employers to place part of the compensation paid to an employee into a qualified, tax-sheltered retirement account. The employer obtains a deduction for the contribution at the time it is made. However, the employee does not treat the amount of compensation placed into the plan as current income, and does not report the income earned in the plan prior to distribution. Only at the time the employee receives a distribution from the plan does he/she recognize income with regard to the distribution.

There are various restrictions upon the timing and amounts of distributions from a qualified pension plan. "Early" distributions[1] are

_____

[1] That is, distributions made before the employee reaches a specified age or certain other events occur.

2

subject to additional tax burdens, as are distributions in excess of permissible amounts.

The instant cases arise because the taxpayers chose to switch from one retirement plan to another and, in connection with their switches, received distributions of the funds in their accounts. These distributions were subject to income tax and resulted in Internal Revenue Service ("IRS") determinations of liability for the additional tax burdens at issue in these cases.

B. Statutory Framework

A "retirement distribution" is an amount distributed under an individual retirement plan or under a qualified employer plan. See § 4980A(e)(1).[2] A qualified employer plan is a "plan described in section 401(a) which includes a trust exempt from tax under section 501(a)," § 4980A(e)(2)(A), that the Commissioner has at any time determined to be a qualified pension plan pursuant to section 401. See § 4980A(e)(2).

Section 4980A imposes a fifteen percent excise tax on "excess distributions" from qualified retirement plans. An "excess distribution" is the amount of a retirement distribution which exceeds an exempt threshold. See § 4980A(c)(1). The exemption is normally $150,000. See § 4980A(c)(1)(A). However, if a distribution qualifies as a "lump sum distribution," the exempt threshold is increased five fold, to $750,000. See § 4980(c)(4).

Section 72(t) imposes a ten percent tax on the gross income included in "early" distributions from qualified retirement plans.[3] A

_____

[2] All statutory references herein are to the Internal Revenue Code of 1986, 26 U.S.C., unless otherwise indicated.

[3] The term "qualified retirement plan" in § 72(t)(1) includes, as it does for purposes of § 4980A, "a plan described in Section 401(a) which includes a trust exempt from tax under section 501(a)." This definition includes "any plan . . . which, at any time, has been determined by the Secretary [of the Treasury] to be such a plan." § 4974(c).

3

distribution is "early" if made before the employee reaches age 59-1/2. <u>See</u> § 72(t)(2)(A)(I).**4**

II. <u>BACKGROUND</u>

In 1927, the State of Maryland created a fund to provide retirement benefits for teachers employed by the state. Maryland created a similar fund in 1941 to provide retirement benefits for all state employees. The two systems, collectively, are referred to as"the Old Retirement System." The Old Retirement System required a non-deductible five percent contribution from all participants. The Old Retirement System was a "qualified defined benefit plan" within the meaning of 26 U.S.C. § 401(a). Therefore, the trusts maintained by the Old Retirement System were tax-exempt trusts under 26 U.S.C.§ 501(a).

In the late 1970's, actuarial projections indicated that the Old Retirement System was dangerously underfunded. In response to those findings, the State closed eligibility for participation in the Old Retirement System as of January 1, 1980. The State also developed the Maryland Employees' Pension System ("the Employees' Pension System") and the Maryland Teachers' Pension System (the "Teachers' Pension System") to provide retirement benefits for state employees and teachers hired after January 1, 1980. The Teachers' Pension System required nondeductible contributions only from those participants who had salaries greater than the taxable wage base set for Social Security benefits. The Teachers' Pension System was a "qualified defined benefit plan" within the meaning of 26 U.S.C. § 401(a), and the trusts maintained by the Teachers' Pension System were, therefore, tax-exempt trusts under § 501(a).

In 1989, the State passed further pension reform legislation. At that point, participants in the Teachers' Pension System had the following four options:

> a. Pay an additional two percent of salary and retain unlimited cost of living adjustments on their benefits at the time of retirement;

_____

**4** The § 72(t) tax is subject to various exceptions, none of which are relevant to the instant cases. <u>See</u> § 72(t)(2).

b. Freeze their rate of contribution at the then-current level and retain the same benefit formula with the understanding that any future cost of living adjustment would be limited to a maximum of a five percent increase in any one year;

c. Participate in a hybrid plan whereby they would receive benefits based on the Teachers' Pension System formula to the extent of retirement credit earned up to July 1, 1984, and benefits based on the new pension system formula for credit earned after that date; or

d. Transfer into a new system ("the New Pension System").

See Conway v. United States, 908 F. Supp. 292, 294 (D. Md. 1995); Md. State Teachers' Ass'n v. Hughes, 594 F. Supp. 1353 (D. Md. 1984) (providing a detailed description of Maryland pension reform).

Appellants Allan R. Powell ("Powell") and Richard J. Montgomery ("Montgomery") were participants in the Teachers' Pension System who chose to transfer into the New Pension System.

III. THE CASES ON APPEAL

In 1990, Appellants Powell and Montgomery transferred from the Teachers' Pension System to the New Pension System. At the time of the transfer, each received a distribution ("Transfer Refund") of their paid-in mandatory deductible contribution to the Retirement System, plus the interest earned on such paid-in contributions. The Transfer Refunds were:

|  | Powell | Montgomery |
|---|---|---|
| Previously Taxed Contributions | $ 20,477.11 | $ 37,064.27 |
| Interest[5] | 456,611.19 | 301,386.74[6] |
|  | $477,088.30 | $338,451.01 |

_____

[5] Interest was computed at the rate of 15.57% per annum.
[6] This amount includes $300,984.04 of interest plus $403.70 of "employer pickup contributions" (plus interest thereon).

5

Powell and Montgomery filed 1990 joint federal income tax returns with their respective wives reporting thereon the taxable portion of their Transfer Refunds. Moreover, Montgomery reported an additional tax of $30,139[7] due to the "early" distribution included in the Transfer Refund.

The Internal Revenue Service reviewed the Powell and Montgomery 1990 federal income tax returns and issued Notices of Deficiency[8] determining that additional taxes should be assessed with regard to each return.

The notice of deficiency issued to Mr. and Mrs. Powell determined that they would be assessed the § 4980A tax on an excess distribution from a qualified retirement plan, to wit, a distribution of $456,611. The tax was computed to be $45,992, being 15% of $306,611 (the net of $456,611 less an exemption of $150,000). The Powells filed a timely Tax Court petition denying liability for the § 4980A tax and claiming[9] that the distribution qualified as a "lump-sum distribution" under § 402(e)(4)(D). Lump sum treatment would effectively eliminate the § 4980A liability[10] and would entitle them to a refund of a portion of the income taxes which they had reported as due on their tax return.[11] The Tax Court sustained the Commissioner, determined that there was a deficiency, and denied the claim for refund of income tax.

_____

[7] That is, ten percent of the net of the $338,048.31 Transfer Refund less the $37,064.27 of previously taxed contributions.

[8] A notice of deficiency is issued pursuant to § 6213 of the Internal Revenue Code. A taxpayer has a period, generally 90 days from the issuance of the notice of deficiency (§ 6213(a)), to petition the United States Tax Court and obtain preassessment judicial review of the Commissioner's determination. See PAULA M. JUNGHANS AND JOYCE K. BECKER, Federal Tax Litigation ¶ 3.04 (1992); MICHAEL SALTZMAN, IRS Practice and Procedure ¶ 10.02[a][ii] (2nd Ed. 1991).

[9] In an amended petition.

[10] By virtue of the $750,000 exemption afforded "lump sum distributions" in § 4980A(c)(4).

[11] A "lump sum distribution" could qualify for preferential ten year forward averaging treatment which, in effect, reduces the income tax payable with regard to the distribution. See § 402(e)(1).

6

The notice of deficiency issued to Mr. and Mrs. Montgomery indicated that they would be assessed the § 4980A excess distribution tax, which in their case amounted to $7,569.[12] Upon receipt of the deficiency notice, Mr. & Mrs. Montgomery filed a timely Tax Court petition denying liability for the § 4980A tax. They also claimed that they had erroneously reported liability for the § 72(t) tax and, therefore, sought a refund of their payment of $30,139 of such tax. The Tax Court sustained the Commissioner, decided that there was a deficiency of $7,569 as had been determined in the notice of deficiency, and denied the claim for refund of the § 72(t) tax.

On appeal, the Appellants assert that the Transfer Refunds were not distributions from a qualified plan subject to the § 4980A excise tax and the § 72(t) tax. In addition, the Powell Appellants contend that even if the Transfer Refund were a distribution from a qualified plan, it was a lump sum distribution that created an increased exemption from the § 4980A tax and would be eligible for preferential forward averaging treatment for income tax purposes.

IV. DISCUSSION

A. Were the Transfer Refunds Amounts Distributed
        Under A Qualified Employer Plan?

Appellants state that a distribution from a qualified employer plan of an amount in excess of the actual earnings on employee contributions automatically disqualifies the plan. Consequently, they argue, the Transfer Refunds could not have been distributions from a "qualified" plan subject to the taxes imposed by §§ 72(t) and 4980A. This boils down to the contention that because the distributions in question would by their nature disqualify the plan when made, then logically the plan could not have been qualified at the time of distribution. Therefore, according to the Appellants, the Transfer Refunds were merely "withdrawal(s) of contributions and interest in excess of that actually earned." In making this argument, the Appellants seek to have the Court ignore the plain language of the statute.

---

[12] This is 15% of the excess distribution of $301,387 (i.e. $22,708), less an offset of $15,139 by virtue of the concomitant liability for the § 72(t) tax.

For purposes of the excise taxes imposed by #8E8E # 72(t) and 4980A, a retirement plan is deemed to be a "qualified plan," even if it is not qualified on the date of the distribution, so long as the Commissioner at any time had determined that the plan was qualified. See §§ 4974(c), 4980A(e)(2). In this case, the New Pension System had been determined to be a plan described in § 401(a) that included a trust exempt from tax under § 501(a) on June 23, 1982. Therefore, the Court must apply the statute as written and reject Appellants' "logical" argument.

As a second line of defense, Appellants, relying on certain temporary regulations issued by the Commissioner, argue that the term "qualified employer plan" does not include government plans because they are not required to file a federal income tax return.

Section 54.4981A-1T(a-3)(c)(2)(I), Temporary Qualified Pension Plan Excise Tax Regs., 52 Fed. Reg. 46750 (1987) provides that an employee plan that is maintained by an employer who"has at any time filed an income tax return and claimed deductions that would be allowable under section 404," is a "qualified" plan. However, the cited Temporary Regulations do not provide an exclusive definition of those plans that will be considered "qualified employer plans." Rather, the Temporary Regulations merely advise that even a plan which has not been the subject of an express IRS determination will be considered a "qualified employer plan" so long as the employer itself has filed an income tax return and claimed deductions based upon the plan's asserted qualified status.[13] The fact that the New Pension System is a government plan, and thus not one as to which the employer has claimed an income tax deduction, does not change its status as a "qualified employer plan" under the statutory provisions here at issue.

For the foregoing reasons, we conclude that the Transfer Refunds were distributions from a "qualified employer plan" and, therefore, that the § 4980A tax is applicable to the Appellants. Moreover, as to Montgomery, who was less than 59-1/2 years of age at the time of distribution, the § 72(t) tax is applicable.

_____

[13] This closes a potential loophole for an employer plan which was placed in operation without an advance ruling of qualification.

B. Was the Transfer Refund to Powell a Lump Sum Distribution?

As discussed above, the § 4980A tax applies to the extent that a distribution exceeds a threshold exemption of $150,000. If the distribution is a "lump sum distribution" to which an election under § 402(e)(4)(B) applies, then the exemption is increased to $750,000. See § 4980(c)(4).

Section 402(e)(4)(A) defines a "lump sum distribution" as a:

> distribution or payment within one taxable year of the recipient of the balance to the credit of an employee which becomes payable to the recipient
>
> * * *
>
> (ii) after the employee attains age 59-1/2,
>
> * * *
>
> from a trust which forms a part of a plan described in section 401(a) and which is exempt from tax under section 501.

(emphasis added). In this case, if the Transfer Refund to Powell (who was at the time over 59-1/2 years of age) constituted a payment of "the balance to the credit" of Powell, it would be a lump sum distribution under § 402(e)(4)(A).

Section 402(e)(4)(D)(ii) provides that "[f]or purposes of determining the balance to the credit of an employee . . . all pension plans maintained by the employer shall be treated as a single plan." The Teacher's Pension System and the New Pension System are maintained by the same employer, the State of Maryland. Therefore, the Teacher's Pension System and the New Pension System must be treated as a single plan. See Dorsey v. Commissioner, T.C. Memo 1995-97; Brown v. Commissioner, T.C. Memo 1995-93; Hoppe v. Commissioner, T.C. Memo 1994-635; Hamilton v. Commissioner, T.C. Memo 1994-633.

9

Under Maryland law, Powell's monthly annuity from the New Pension Plan is calculated by taking into account his "average final compensation" and his years of "creditable service," including the years under the Teachers' Pension Retirement System. Upon transfer to the New Pension System, Powell did not forfeit his right to receive future monthly annuities, but rather agreed to receive a large single payment followed by reduced monthly annuities. Moreover, any transferee who had a contribution not eligible for refund would have the contribution transferred into the transferee's New Pension System account, "along with his or her service credits, salary level, and relevant past information accumulated by the Retirement Agency." Conway v. United States, 908 F. Supp. 292, 296 (D. Md. 1995); see Md. Code Ann. art. 73B, § 32. In addition, as stated in Conway, "although intangibles such as service credits and salary level may not have a definite or immediately discernible pecuniary worth, they nonetheless represent real value in the calculation of future New Pension System benefits." Conway, 908 F. Supp. at 296. Accordingly, when Powell transferred from the Teacher's Pension System to the New Pension System he received the balance to his credit in two parts, the Transfer Refund payment at issue and the right to receive a monthly annuity from the New Pension System upon retirement.

In the case at bar, Powell did not receive the final and complete payout of his benefits at the time of transfer because he remained entitled to receive monthly annuities. Therefore, the Transfer Refund received by Powell did not constitute the entire balance to the credit of his account. Accordingly, it is not a "lump sum distribution" within the meaning of § 4980A. For this reason, we affirm the Tax Court's determination that Appellant Powell is not entitled to an increased exemption of $750,000 from the § 4980A tax penalty under § 4980A(c)(4).

C. Can Powell Obtain Preferential Ten Year Forward Averaging Treatment?

Powell contends that he is entitled to preferential ten year forward averaging treatment pursuant to § 402(e)(1) so as effectively to reduce his income tax liability on the Transfer Refund.

Generally, the taxable portions of distributions from a qualified plan are subjected to income tax for the year of receipt.**14** However, if a distribution is a "lump sum distribution," then it is eligible for preferential ten year forward averaging treatment pursuant to § 402(e)(1).**15** However, as discussed above, the Transfer Refund was not a "lump sum distribution" within the meaning of 402(e)(4)(A). Therefore, Powell is not entitled to the preferential forward averaging treatment provided by § 402(e)(1).

For the foregoing reasons, the decisions of the Tax Court are, in all respects,

AFFIRMED.

_____

**14** Unless rolled over to another qualified plan or into an IRA.
**15** The Tax Reform Act of 1986 replaced ten year forward averaging with five year forward averaging of lump sum distributions made after December 31, 1986. However, individuals (such as Powell) who were fifty years old before January 1, 1986, are eligible for ten year forward averaging.

11