In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 09-1620, 09-2271

STEPHEN I. BANDAK,

*Plaintiff-Appellee*,

*v.*

ELI LILLY AND COMPANY RETIREMENT PLAN, *et al.*,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:06-CV-01622-LJM-JMS—**Larry J. McKinney**, *Judge*.

ARGUED OCTOBER 9, 2009—DECIDED NOVEMBER 18, 2009

Before POSNER, ROVNER, and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*.   Bandak, a retired employee of Eli Lilly, sued the company's retirement plan under ERISA and received a judgment for $100,222.86 in damages and an injunction against the plan's offsetting any of his future benefits by amounts paid to him under a plan in which he was enrolled when he worked in the United Kingdom. The district court also awarded him

attorneys' fees and costs, amounting to $89,612, on the ground that Lilly's position in the litigation had not been substantially justified.

Bandak, who is English, began work for the Lilly group of companies in 1978 in England, and was enrolled in the pension plan of the English member of the group. In 1995, he was shifted to the United States. Lilly informed him in writing that he was now enrolled in the U.S. affiliate's retirement plan and that his benefits under the plan would be based on his years of service retroactive to his initial employment by the Lilly group, which is to say back to 1978. Thus he would be treated as if he had worked for U.S. Lilly from 1978 to 1995 rather than for the English affiliate. He retired in 2004.

The plan in effect in 1995 said that an employee's retirement benefits "shall be reduced by the Actuarial Equivalent of any benefit payable to such a person under a *qualified defined benefit plan* maintained by" a Lilly employer (emphasis added). On the basis of this provision, the plan administrator decided that Bandak was not entitled to benefits under the English affiliate's retirement plan because it was a "qualified defined benefit plan" and thus within the exclusion. If this is correct, Bandak's pension entitlement would fall from $18,000 a month to $14,000.

The term "qualified defined benefit plan" is an American legal term that means a plan approved by the Internal Revenue Service for favorable federal tax treatment. See, e.g., 26 U.S.C. §§ 401(a)(5)(D)(i), 1060(e)(2)(A)(ii) ("a defined benefit plan . . . which qualifies"); 26 C.F.R. § 1.401-

4(c)(7)(ii); *Powell v. Commissioner*, 129 F.3d 321, 323 (4th Cir. 1997); *Arnold v. Arrow Transportation Co.*, 926 F.2d 782, 783 (9th Cir. 1991); *Wilson v. Bluefield Supply Co.*, 819 F.2d 457, 464 (4th Cir. 1987); Jesse D. Taran & Pamela C. Scott, "Qualified Defined Benefit Plans: The Essentials," 875 *PLI/Tax* 149, 155 (2009). It has no reference to foreign taxation. The presumption in interpreting a contract is that the meaning of a technical term is its technical meaning, *Reed v. Hobbs*, 3 Ill. 297 (1840); *Minges Creek, LLC v. Royal Ins. Co.*, 442 F.3d 953, 956 (6th Cir. 2006); *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1013 (3d Cir. 1980); *Superior Business Assistance Corp. v. United States*, 461 F.2d 1036, 1039 (10th Cir. 1972); *Restatement (Second) of Contracts* § 202(3)(b) (1981), and thus, if it is a technical legal term, its technical legal meaning. *Sunstar, Inc. v. Alberto-Culver Co.*, No. 07-3288, 2009 WL 3447450, at *3 (7th Cir. Oct. 28, 2009); *Mellon Bank, N.A. v. Aetna Business Credit, Inc., supra*; *Superior Business Assistance Corp. v. United States, supra*. Elsewhere in the plan document, moreover, "qualified" plan unmistakably means a U.S. plan because it makes specific references to the Internal Revenue Code.

Lilly argues that it would be "unfair" for Bandak to get greater benefits than if he had begun work for Lilly's U.S. affiliate rather than its English affiliate in 1978. Whether and in what sense it is "unfair" would require a deeper investigation than attempted by the plan administrator—would require for example investigating whether it really is "unfair" to give an employee relocated to a foreign country (remember that Bandak is English, not American) a 30 percent increase in retirement benefits

($4,000/$14,000). Lilly is a sophisticated enterprise, the plan document was undoubtedly drafted by lawyers specializing in ERISA, and those lawyers would, unless it were otherwise stated in the document, use technical legal terms in their technical legal senses.

While conceding that "qualified defined benefit plan" is not an English legal term, Lilly says that the plan in which Bandak was enrolled when he worked in England was a "broad-based retirement plan" entitled to favorable tax treatment under English law. The district judge rejected the argument on the grounds that the administrative record contains no English plan document and that Lilly cites no English law. Lilly thus laid no foundation for comparing the English plan to a U.S. "qualified defined benefit plan."

The U.S. plan does state that "in no event shall an Employee receive credit more than once for the same period of Service." But the plan restricts "Employees" to citizens or residents of the U.S., and Bandak was neither when he was working for the English affiliate.

Two years after he was relocated to the United States the retirement plan of the U.S. affiliate was amended to provide that the plan benefits "of an individual who becomes an Employee on or after April 1, 1997" would be reduced by the amount of benefits to which he was entitled "by a plan or program maintained by a non-United States [Lilly company] . . . that provides retirement-type benefits," or by the retirement plan of a foreign government. The amendment did not apply to Bandak, whose employment by the domestic affiliate had begun

before 1997; its only significance in the litigation is in undermining Lilly's position.

Rather than trying to define a "qualified" retirement plan, the amendment eliminated double counting for anyone who had received "retirement-type benefits" under a plan maintained by a foreign Lilly affiliate for whom the employee had worked. Lilly argues that the amendment does not apply to foreign retirement plans that are "like" a U.S. qualified defined benefit plan; those plans, it argues, had always been usable to reduce benefits. On this interpretation the plan administrator when dealing with a benefits claim by someone like Bandak who is not subject to the amendment has to decide how much "like" a "qualified defined benefit plan" in its U.S. sense the foreign affiliate's plan had been. The administrator would have to familiarize himself with the retirement laws of the 52 other countries in which one or more of Lilly's 142 affiliates operate. He would have to decide whether the Chinese affiliate, for example, has a retirement plan that is sufficiently "like" a qualified defined benefit plan under U.S. law to satisfy the plan administrator's understanding of "qualified defined benefit plan."

Notice the strangeness of an interpretation that allows an employee to get double service credit (as Lilly's lawyer acknowledged at argument) if the foreign affiliate's retirement plan is not given favorable tax treatment by the foreign government.

It seems the amendment was intended to close what Lilly belatedly had decided was a loophole through which

Bandak has sailed. This interpretation is supported by the minutes of the Lilly board meeting at which the amendment was adopted. The chairman of the board explained that the "amendment is necessary to prevent the Company from paying benefits for years of service that are already being paid or credited by another affiliate or foreign country." That describes Bandak's case to a T.

The contention in Lilly's brief that the reference in the minutes to years of service "credited by another affiliate" is a reference to defined contribution plans, not defined benefit plans, makes no sense. Though Lilly does offer a defined contribution plan, benefits generated by such plans are based on the contributions to the employee's retirement account rather than on his years of service. E.g., *Evans v. Akers*, 534 F.3d 65, 71 n. 5 (1st Cir. 2008); *Hawkeye National Life Ins. Co. v. AVIS Industrial Corp.*, 122 F.3d 490, 500 n. 6 (8th Cir. 1997); Andrew L. Gaines & Steven M. Margolis, "An Introduction to Defined Contribution Plans," 875 *PLI/Tax* 183, 189 (2009). Nor were defined contribution plans common prior to 1997. See Gregory N. Filosa, "International Pension Reform: Lessons for the United States," 19 *Temp. Int'l & Comp. L.J.* 133, 137 (2005); Marti Dinerstein, "Social Security 'Totalization': Examining a Lopsided Agreement with Mexico," Center for Immigration Studies (Sept. 2004), available at www.cis.org/articles/2004/back904.pdf (visited Oct. 11, 2009); Noriyuki Takayama, "Pension Reform in Japan at the Turn of the Century," 26 *Geneva Papers on Risk and Insurance* 565 (2001); Lothar Schruff, "Pensions and Post-Retirement Benefits by Employers in Germany," 64 *Brooklyn L. Rev.* 795, 800 (1998).

The implication that the 1997 amendment was based on a belief that without it persons in Bandak's situation would have a double dip is further strengthened by Lilly's inability to name even one person whose benefits under a foreign retirement plan had been reduced *before* the amendment (which remember is not applicable to Bandak) went into effect, even though Lilly is a global enterprise and many of its high-level scientific employees, like Bandak, must at times during their career with Lilly reside in different countries, working for different affiliates each with its own defined benefit plan.

A document in Bandak's employee file states that "until 1997 [the reference is to the 1997 amendment], the offset [for foreign plans] was not specifically written into the plan, but was followed as a common practice." Provisions of an ERISA plan must be in writing. 29 U.S.C. § 1102(a)(1); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83-84 (1995). They cannot be modified by "common practice." E.g., *Orth v. Wisconsin State Employees Union Counsel 24*, 546 F.3d 868, 872 (7th Cir. 2008); *In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation*, 58 F.3d 896, 905-06 (3d Cir. 1995).

Lilly reminds us that a plan administrator's judgment is entitled to deference when as in this case (as in almost every case) the plan document vests the administrator with discretion in interpreting and applying the plan. But the entitlement is diminished by indications that the conflict of interest inherent when benefits determinations are made by a plan funded by the employer has infected the administrator's consideration of the

application for benefits. As we explained in *Marrs v. Motorola, Inc.*, 577 F.3d 783, 789 (7th Cir. 2009), elaborating on the Supreme Court's decision in *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008), "If the circumstances indicate that probably the decision denying benefits was decisively influenced by the plan administrator's conflict of interest, it must be set aside . . . . The *likelihood* that the conflict of interest influenced the decision is therefore the decisive consideration, as seems implicit in the majority opinion's [in *Glenn*] reference to indications of 'procedural unreasonableness' in the plan administrator's handling of the claim in issue, *id*. at 2352 (emphasis in original), and its suggestion that efforts by the plan administrator to minimize a conflict of interest would weigh in favor of upholding his decision. *Id*. at 2351."

We know that the chairman of Lilly's board of directors was concerned about the cost of its retirement plan. And the disingenuousness of Lilly's arguments suggests that the conflict of interest was indeed gnawing at the administrator. Consider the administrator's failure to identify *anyone* in Bandak's position hired before the 1997 amendment who had been denied service credit for his time with a foreign affiliate, and consider the implausible suggestion that the reference to private plans in the 1997 amendment is just to defined contribution plans. Consider also the barrenness of the record concerning the English plan and English tax law, which makes one wonder how the plan administrator even knew that the English plan was a "qualified defined benefit plan," and which suggests the administrator was covertly applying the 1997 amendment, while conceding its inapplicability to Bandak.

So not only was the district court's decision correct; Lilly's rejection of Bandak's claim was not substantially justified, and therefore the district judge committed no error in awarding Bandak his reasonable attorneys' fees and costs. *Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 670-72 (7th Cir. 2007); see 29 U.S.C. § 1132(g). Bandak has asked for fees for defending the appeal, and he is entitled to them too. As we explained in *Sullivan*, "affirmance entitles an appellee who has properly been awarded an attorney's fee in the district court to an attorney's fee for successfully defending the district court's judgment in the court of appeals. Otherwise the purpose of the initial award—to shift the cost of litigation to the losing party—would be imperfectly achieved." *Sullivan v. William A. Randolph, Inc.*, *supra*, 504 F.3d at 672 (citations omitted). Bandak is directed to submit within 10 days an itemized statement of the attorneys' fees that he incurred in defending the appeal, and Lilly will have 10 days to respond.

AFFIRMED.